May it please the court, I'd like to reserve two minutes for rebuttal. Your Honor, the question before this court is a narrow one. While our brief has laid out the legal basis for every step in this case, we believe the question before this court basically is whether or not there was a probable cause based on the officer's observation of a bullet in plain view to search the vehicle for the presence of a gun. The facts in this case are undisputed. In fact, the defendant in his response brief adopted the people's version of the facts in our initial brief. This question is therefore a legal one, which this court should review to know. We posit that the officer's observation of the bullet here did in fact provide the officer's probable cause. Well, whether the facts are undisputed, we still have to defer to the trial judge as to any factual findings that he made in the course of deciding the motion. And did he make written findings? He did make some written conclusions, Your Honor, with respect to certain issues. With respect to the factual issues, I believe his findings were in accordance with the testimony of Officer Alcott at the hearing. All right. And really one of the key questions is where we begin the analysis. Because you indicated probable cause, but you're basically starting at the point when the officers observed the bullet in the car itself, and the defendant, and I take it the trial judge, began the analysis a little earlier than that and determined whether or not a Terry stop had occurred. And are you saying that no stop at all occurred prior to the bullet being observed? That's correct, Your Honor. We would argue that under People v. Ludman, the initial approach was a consensual encounter. The officers were merely approaching to alert the defendant in this case that his vehicle was blocking the driveway. That is in accordance with the finding effect made by the trial judge in this case. I've seen that happen quite often where somebody is blocking a driveway or a double park and an officer pulls up, and they usually pull up right behind the car and use their loudspeaker to tell them that he's blocking the driveway or double park and he should move along. But that didn't occur here. In fact, both officers exited the car, which suggests that perhaps something more than just citizen inquiry is being made here. Your Honor, in this case, the officers actually parked their car in a position that didn't block the defendant's ability to leave. But when you say it didn't block it, are you suggesting that they were free to leave? Certainly, Your Honor, I was. In fact, how many people would observe a police vehicle park in front of their vehicle and still feel that they were free to leave? I mean, that's certainly a rare situation, wouldn't you say? Your Honor, we would argue that under People v. Ludman, the court addressed that and they found that unless there were signs of restraint, that it didn't constitute a seizure. In fact, the sentencing found it. Isn't it a sign of restraint that a police officer went to both sides of the vehicle, that they were in uniform, that their car was in front of the other vehicle, meaning that it would have to go around it in order to pull off, and that they were fully armed? Your Honor. Indicate restraint? We would argue that it didn't. In fact, in this case, I believe the testimony was that they didn't need to go around, that the officers could actually, that the car's defense contractors could just pull away and continue into the parking lot towards the hotel. The officers were not uniformed. They were wearing bulletproof vests that indicated they were police, but they were not fully uniformed. Although they were, as Your Honor pointed out, did have their arms holstered in their sidearm. And under the mental health factors cited in Ludman, when we look at those, we look at the fact that here there were two officers, which was one of the factors, but there was no other indication of restraint. In Ludman, a uniformed officer did walk up to the side of the car alongside the back towards the front of the driver's side window in much a similar way that the officer did here, and the court there found that it wasn't a seizure. Didn't what the officers observed answer their question as to what the vehicle was doing there? Didn't they observe someone exit the hotel, get into the car, and presumably just about to drive away, but for the officer's intervention? Your Honor, as they were approaching, they did see somebody get in. We would argue, though, that once they're at the car, in a position where they're legally intended to be standing next to the car, and they then observed in plain view the bullets, the bullets were in plain view. They were legally entitled, as any officer is, to approach and ask questions. But you admit that the facts were that the individual entered the car before the officers arrived, which means that the only way the officers could have seen what was inside the vehicle was for the car to remain where it was at, which would suggest that there was something keeping the car there, which may have been two officers approaching from either side of the car. But I think I would add to that. Your Honor, I believe the testimony was that as the officers were approaching, the other passenger entered the vehicle. I'm not sure, based on that testimony, exactly where the officer was with respect to the car exactly. Second, Your Honor, I would argue that while in the case that Your Honor mentioned, if the defendant believes he wasn't free to leave, he certainly was free to leave. There was nothing impeding his ability to leave that, and that's what the court has determined. Once again, I have to question. You're saying that a reasonably innocent person would feel unrestrained to drive away as he sees two officers approaching his vehicle, who obviously parked right in front of their vehicle for the very purpose of making inquiry of these individuals. You think that a reasonably innocent person would feel unrestrained? Your Honor, I think the Illinois Supreme Court and Littman decided that that was the case, and I would tend to agree with them in this matter. And as Your Honor pointed out- Don't you think that the officer's immediate next response would be, oh, this is a fleeing felon, and they would be in hot pursuit if the defendant chose at that opportunity, at that moment, to depart the scene without even conferring with the officers? Well, I would argue that, no, Your Honor, that, again, once again, this was an encounter- You think they just let him go? Well, I think I can't put myself in the officer's spot in minding that position, but- What if the officer said, hold on, hold on, stop right there? Sure. What if the officers had said that as opposed to my directing that to you? I'm sorry? What if the officers had, in fact, seen the car about to take away, or drive away? You don't think that the officers would have said, hold on, stop? We want to ask you a few questions. Well, I think the officers testified that it was not a traffic stop, and so, therefore, it's the understanding that they really had no reason to- But if it wasn't a traffic stop, maybe there was no reason for them to make inquiry to begin with. Your Honor, under the laws that stands under the people we live in, they have the right to approach a vehicle and simply ask the passenger a question. That's the way the Alonzo Supreme Court stated it in Goodman, unless there are signs of restraint, which are the mental health factors listed in Goodman. And the mental health factors do not support a seizure in this case, or a restraint, I should say. The judge found a seizure. What did the judge find? If I recall correctly, the judge found that the initial approach was, in fact, a consensual encounter, that there was no seizure up until the point that the defendant was actually, obviously, removed from the vehicle and handcuffed. Oh, that can't be the case. Well, that may have been the initial ruling by the trial judge, but his subsequent ruling following the motion for reconsideration, he suppressed the bullet as well, which means that he had to suppress the observation of the bullet. If the bullet was observed properly, if the officers were able to observe the bullet, then there would be no basis to suppress the bullet. But he did. So suggesting that he, in fact, found the entire approach to the vehicle amounted to a carry stop, unsupported by reasonable suspicion. I would just like to disagree with that conclusion, Your Honor. I believe the judge found that the seizure of the bullet was not constitutional and, therefore, anything going forward. Why wasn't it? I believe because the judge stated the officer did not ask for a FOIA card. But the initial approach, I don't recall at this point that he addressed the initial approach. He didn't address the initial approach. In the reconsideration. Right. He did not. He talked about the seeing of the bullet and not asking the question regarding whether or not the defendant had an FOIA card. Correct. So at that point, I would argue that it was not the initial approach that led him to his conclusion, but the actual seizure of the bullet. And what did the officer say? In fact, the officer said nothing about an FOIA card because he wasn't concerned with an FOIA card. He was concerned with what? Well, Your Honor, again. He was concerned with the connection between the bullet and possibly something else in the vehicle, which suggests that his intentions were to determine whether or not that concern had any basis. I would agree with that at the point that the officer saw the bullet in the car. And that's our argument, is that once the officer saw a loose bullet here, we're talking about a three-inch bullet, loose in a plastic bag. These aren't bullets encased in a box that the defendant just purchased at the store. These are loose bullets in a plastic bag. Once the officer sees those bullets in the center console, we argue that it's reasonable for the officers to believe that there's contraband in the vehicle. The main purpose of a bullet is to go in a gun. Is bullet contraband? A bullet in itself, in this case, Your Honor, we would argue is not contraband, but probable cause does not require that the item be contraband, only that the totality of the facts and circumstances known to the officers, and including the officer's experience, lead them to believe that there's probable cause that contraband is in the car. Again, the purpose of a bullet... I think you're skipping a step. If the officer sees the bullet, you're going to probable cause to search the car, but isn't there another step if you see the bullet, then there is a Terry-type protection for the officers to pat them down, and then finding the bullet on the defendant, they go into the car. I think there's a way, I think under the automobile exception, they did a probable cause to search the vehicle at that point. In this case, the officers did, we would argue, take the defense out, conduct a Terry, seize the subsequent five bullets that were found in the car, conduct a pat-down, found another bullet, and then searched the vehicle. If anything, the bullet they found on the defendant, again, a loose bullet in his pocket, further adds to the probable cause that there might be a gun in the car. Let me ask you this regarding your analysis on probable cause. If, in fact, observing the bullet led the officers to question whether there was a true contraband within the vehicle, why shouldn't the law require that the officers at that point determine whether or not the bullet is, in fact, legally, illegally in the car by the absence of an FOID card, requiring the officers to ask for an FOID card? Because if the individual had produced an FOID card, your entire probable cause would dissipate, wouldn't it? I don't think that's the case, Your Honor. Would an FOID card make the bullet in the vehicle a lawful possession? The FOID card would make the bullet in the vehicle lawful. Right, so at that point, what probable cause would exist for the search of the vehicle based on a legal item within the vehicle? Your Honor, I think that, once again, we relate to the fact that the bullet in the vehicle is a reasonable indication of the presence of a gun. Carrying a gun in a vehicle is against the law. Well, if he had an FOID card on his person, that would make it a legal possession of a bullet within the car. Correct, Your Honor. So there's no probable cause, isn't that correct? We would disagree. We would argue that it's illegal, even in that particular case. So you can have probable cause on possessing a lawful item in the vehicle? I think, Your Honor, if that leads to the reasonable belief that there's a gun in the vehicle, and I point... Would it be reasonable at that point that a lawful item within the vehicle would lead to a reasonable basis to believe that a crime has occurred? I think so, Your Honor, and I point to the court to People v. Shrems, which is a drug case. But in that case, the officer viewed a glass pipe in the car, which in and of itself is not against the law. What else would you use a glass pipe for? You would use a glass pipe to... Do you know anyone who's ever used a glass pipe for anything other than that? I personally don't, Your Honor. You don't know anybody who's used one, do you? I personally don't, but I'm sure people do. You're sure that people do? If you were sure that people do, I suspect the court might have said that as well. But I suspect that there isn't any other reason to have such a glass pipe. At least, I'm not aware of anybody that uses such a glass pipe. I don't either. Its only connection is with contraband, and therefore, there's a reasonable basis to connect the two. But here, if there is some, if it's not illegal to have a bullet, then... As Your Honor just stated, its only connection is with an illegal substance. Right. The same with a bullet. The only connection that a bullet has to a gun, and a gun carried in a vehicle, is against the law. Therefore, in the same way that it was in Shrems, as Your Honor just stated, a probable cause to search the car for narcotics, here, the viewing of a bullet is a probable cause to search the vehicle for a gun, which is not lawfully carried under Illinois state law in a vehicle. Under certain circumstances, it could, but generally, in the passenger immediately accessible, it would not be lawfully in a vehicle. Simply because a person had a bullet, or was legally carrying a bullet, does not mean, necessarily, that there was a gun. The gun could have been reposed in the home, you know, at their office, wherever they legally had a right to have it, with an FOID card. Certainly, Your Honor, and I think the standard here is reasonableness. And I think we need to look at whether the officer's belief at that point was reasonable. Not the alternative of what could have occurred otherwise, but whether the officer's, at this point, viewing a loose bullet, three inches long, but the biggest pistol bullet the officer's ever seen by his testimony, a .454 caliber bullet, leads him to believe, is reasonable for his belief, that there may be a gun in the car. We argue that it was, based on the officer's experience, based on what they were viewing at the time, that their belief was reasonable. Let me make sure what you're arguing. You're arguing probable cause, or are you arguing reasonableness under Terry? Your Honor, we are arguing a probable cause. Okay. We would argue as an alternative to Terry, which we argued in our brief, as well. But we would argue, as our main argument, that there was probable cause to search a vehicle based on the presence of the bullet. All right. Any other arguments, Counselor, Your Honor? Your Honor, we would just briefly point, Your Honors, to a People v. Stack, which, while distinguishable on some counts, read closely, clearly indicates that the presence of a bullet is a reasonable indication of a gun justifying the search. You'll concede that there's authority on either side of that question? I concede that there are some distinctions with the context of the case, but read closely, the statement that the court makes, I would say, is ambiguous. Counselor, spell your last name for me. It's B as in boy, U, Z as in zebra, Z as in zebra-eye. How do you pronounce your first name? Hugo. Hugo? Yes. Thank you. Thank you, Your Honor. With a silent H? Not present H? In Italian, with no H. In Spanish, with an H. For those reasons, as stated in our brief, we would ask this Court to reverse the trial court's granting of the defendant's motion to suppress. You'll have two minutes, Your Honor. As for the record, I'll just spell your notes, B-A-L-I-U-N-A-S. So what's wrong with the officers approaching a vehicle, asking or approaching the vehicle to find out what's going on, and in the course of getting close enough to the vehicle, shining a flashlight into the vehicle and observing what could be contraband? I mean, why is that a problem at all? Your Honor, I would suggest this, is that first I'd like to dispute a factual issue that arose in the plaintiff's response brief, is that the individual leaving the hotel was running. I do not agree with that at all. I stated in my opinion. Did the judge find him to be running? Absolutely not. I don't know where counsel came up with the running, but it certainly is not part of the record. And the officers didn't testify that that caused them any concern? No. Okay. What's wrong with the officers approaching a vehicle that's parked in a hotel lot as a course of just police-citizen contact? Why isn't that police-citizen contact? The manner in which they approach is significant, as Your Honor asked of prior counsel, is, number one, I find it particularly interesting that the officer, Alcott, testified that he was not able to pass the vehicle. There was not enough room. The vehicle was blocking. But yet he testifies that he drove around through the parking lot, then got in front of that vehicle, and he wasn't blocking it. I find those things completely inconsistent. I'm sorry, counsel, doesn't he actually say that the vehicle is blocking the entrance to the motel to go south? So he had to go west and go around the motel and come back south. And when he came back south to where that vehicle was, he parked in front of it, but I think to the right of it so that the vehicle could go south into the lot. He was not blocking the vehicle. He was going south into the lot. That's correct. Right. Well, he said he wasn't blocking the vehicle. He wasn't blocking the defendant's car at all. The defendant was blocking the south entrance to the motel, not the west entrance. And he went west. I think that's what. Yes, you're absolutely correct, Your Honor, in that. Obviously, the driver of the vehicle could continue on into the parking lot of the motel. But in essence, the vehicle isn't in front of him. You have two armed officers wearing bulletproof vests approaching the vehicle in an investigatory fashion, driver's side, passenger's side. As Your Honor indicated, he had nowhere to go. A reasonable person under those circumstances would believe that he was not free to leave. Now, this all occurred after an observable fact and a conclusion that can be drawn that they were waiting for somebody to exit the motel and they were waiting for this individual, period. This individual had the opportunity to get into the back seat before the officers approached. The record is explicitly clear in that regard. It says as the officers are approaching. As. Yes. But they had not actually approached the vehicle in a position to make any observations what's inside the vehicle. So are you saying that in order to protect the rights of the individuals in the car that the officers at that point had to turn around and walk back? Yes. To their vehicle? Yes. Why shouldn't they simply be allowed to continue walking towards the vehicle and complete the objective that they decided upon, which was to find out what was going on? Well, because they had already placed themselves in a position where the individual did not feel free to leave, which is the essence that I'm trying to get at. And to some extent. At that point in time, they were not free to leave. They certainly didn't feel free to leave. But to some extent, that's the very essence of police-citizen contact. The police rely on the fact that some citizens are not going to feel free to leave, but there's nothing wrong with the citizen feeling not free to leave, so long as the police don't impose that feeling on them. And I'm not sure what the police did here that was so out of bounds. Well, first of all, obviously Judge Simpson, at the time, did not feel that there was significant restraint of these individuals and that the police officers did have the right to come and observe what was in the vehicle or talk to the driver. In fact, that's one of the real concerns for us because we owe deference to the trial judge. And we have somewhat conflicting findings, well, maybe less than clear findings. In the first instance, he finds that the bullets are not suppressible, but the gun is. And then he, on a motion to reconsider, he says, no, the bullets are as well. But we don't have explicit findings of fact that he should have made. Exactly. And so how do we give deference? Well, I don't think we, you know, I made that argument at the time, but I think the primary argument should be this, is that I don't believe that the police had, even after observing a bullet, and you have to look at the circumstances here. It's relative daylight. It's eight-something in the evening on a June day. The officers testified that they were not there in response to any type of criminal activity, that they customarily cruised the parking lot for kids or something to that extent. Parties. There is no parties or whatever the case may be. There is no criminal activity afoot of any nature. There is no complaint from the hotel. And what happens then is they observe a bullet. My specific answer to that is, so what? That is not illegal, period. You're not suggesting that the police at that point should simply observe a bullet and then not say anything about the bullet? No, I'm not suggesting that. Or not say the answer? My initial inquiry should be, whose bullet is it, and does anyone have a FOID card? And is it not logical that if you see a bullet, for an officer to then want to find out whether or not there's a gun that the bullet fits? So what? My answer is, so what? So there's a gun in the car. It's not illegal to transport a firearm. The only reason is it cannot be immediately accessible. There could be a gun in the trunk. So what? I have a gun in my trunk when I go to the shooting range. I could have a bandolier around me when I'm driving. Does that mean that upon observation of a bullet, the police have a right to extricate three people out of that car, immediately handcuff them and do a custodial search of all three individuals and the automobile? I think not. Why should we immediately assume that there's illegal activity afoot? And so there is a gun in the car. The question is immediately accessible. Except that when we're talking about a reasonably innocent person, we're also a reasonably innocent person could, well, a person that is innocent could only be innocent if he, in fact, had an FOID card. And you would think that a reasonably innocent person would declare that he has an FOID card, and if he doesn't declare it, the police have a right to assume that he doesn't have one. I don't believe a citizen has any kind of legal obligation to declare anything. The police in this instance. Let's say it's not an obligation, but let's say it's just a matter of cooperation with the police. He knows why the police, he knows what the police observed. He could simply say, hey, I have an FOID card. Well, first of all, he didn't even have an opportunity to speak. Period. Because immediately upon the observation of the bullet, he was immediately and all the passengers were ordered out of the car, and he was arrested and handcuffed before he could even say anything. Who was it that told the police that he was waiting for someone to get in the car? He was waiting for. I believe that was before the observation of his partner about the bullet. So he had an opportunity to speak, and he said he was waiting for. The officer that was questioning the defendant only became aware of the bullet when his partner called attention to it. He did not see it. And he was asking the individual why he was here. The individual responded, I'm here to pick up the guy that just came in. So he had an opportunity to speak. Only in that regard. But as soon as that bullet was discovered, he had no other opportunity to speak. What's wrong with the police saying, everybody out of the car, we're going to search you, and then the citizen says no I.N.F.O.I.D. card at that point? I mean, the police can react and be wrong about their reaction, but we want the police to take some initiative. We want the police to make inquiries. If I have a bullet in my car and I have a weapon unaccessible to me in the trunk, how would they know it was inaccessible if they did not look? The police are assuming it's accessible? That's what they have to find out. You can certainly ask the question, do you have an F.O.I.D. card? That's the initial inquiry. And I think the one case that I cited deals specifically in that area. I'm sorry, you can go on the site please, I wanted to ask a question. My question is, once the officers get to the car and they see a very large bullet that's not in a weapon in the vehicle, and there are three men in the vehicle, is it reasonable at that time, prior to knowing if there's a gun anywhere in that car, to ask those three people to get out at 845 at night and for officer safety to either pat them down or search them for a weapon? Because one time the officer referred to it as a pat down, another time I think in response to a question he answered yes, it was a search. I mean, is it reasonable? I won't say conceding, but for sake of argument, if the officer has a right to approach any citizen and say something to them and they see the bullet with three men in the car, is it then reasonable, before the officer does anything else, to ask them out and pat them down? And once he pats down and finds a bullet in his pocket, then does he have sufficient probable cause to search that vehicle? I think we have to use a test about the total circumstances surrounding the situation. And this is absolutely benign. Your Honor mentioned three young men. I don't know how the record speaks in that regard. I intentionally did not ask questions regarding sex, race, or whatever of the individual. I thought the record was three men. I thought the driver was a man, a man approaches and gets in the car, and I thought the record was that there was another man in the car. I'm saying they could be older than us. Assuming the argument was three women, would that make a significant difference? Not in this day and age, no. No, it doesn't. So what I'm saying is the situation is absolutely benign. Let's change it a little. Let's change it to the streets of Chicago. Let's deal with the three. I mean, I could put three little kids in it, but we have three men at 845 at night in a parking lot. Two have sat there two to three minutes after blocking the thing, and the cops have gotten all the way around, and they're still sitting there. As they approach, a man comes out. As they approach, a man comes out, and I think the answer is that they must have been waiting for him, period. That's what they were doing there. And then when he initially questions the driver, what are you doing here? He says, I was waiting for the gentleman that just got in. And then his partner now then sees the boy. Yeah, I think it's a benign situation. Everybody has a heart attack over it, And that's the reason that I wanted this court to be cognizant of the most recent United States Supreme Court opinion in McConnell. I asked the court to consider that. Now what we have is an absolute Second Amendment federal constitutional right applied to the states of an individual to bear arms, obviously with certain restrictions that the courts and legislatures may impose. But I think it's a significant right that should not be interfered with lightly. And I think that under absolutely benign circumstances. It's like bear arms in the home, not in the car. No. That's what the case speaks to. When you say in the car, why do we always assume that if it's in a car, it's being transported illegally? What does this have to do with holding a bullet, with carrying a bullet? What does it have to do? Let's deal with this case. The right to bear arms, the corollary to that is the right to have ammunition for your arms. Otherwise, the right is totally negated. That's the only reason I mention it. But Illinois citizens, they already have the right to have bullets, to carry bullets as long as they have the FOID card. That's correct. And that's the entire issue here. They should have asked them for the FOID card rather than arresting everybody at the scene and performing custodial searches. That's the entire argument. If he'd asked them for the FOID card, we all know what the answer would have been. What would it have been? No. First of all, the record as it stands before this court, there is no indication that he was a convicted felon or did not have a FOID card. The record is absolutely silent. As we stand here today, my client is presumed to be innocent. There's not one indicia in the record that he did not possess a valid FOID card at the time, nor was he a convicted felon. It's mainly on the basis of an indictment. Let's say the question is this, or the real issue before us is this. Whose burden is it to inquire of an FOID card? Is it the officer's burden to make that inquiry before he can take any action, or is it the citizen's in order to avoid the inconvenience of being arrested by officers or at least terri-stopped by officers to give notice that he has an FOID card? If we don't want to burden the police officers from taking action, then we should put that burden on the citizen. You often see where individuals who have weapons in their car get stopped for a traffic stop and they're going to say, hey, I have an FOID card. I have a gun in the back. I just want to let you know that. That happens. It may happen, but is the citizen under any obligation to do so? And that's what we're discussing here. I don't believe so. I believe the officers acted improperly in that they should have asked the gentleman for the FOID card. I believe my position is substantiated by prior Illinois case law, which I have cited. For me, your position is that once the officers saw the bullet, they had to ask the question regarding having an FOID card before they asked the people to get out of the car to be patted down for this. That's correct. I don't believe we got into a terrorist situation because of the mortality of the circumstances and the benign surroundings. Absolutely, Your Honor. That's my position. Okay. Thank you, Counsel. Thank you. Brief rebuttal. I'd like to just begin by briefly mentioning counsel's use of the word benign in this situation. I think we need to look at this from the perspective of an officer. An officer using a bullet in a car based on his or her experience, we believe certainly would not consider that a benign situation. Especially in light of the Supreme Court's consideration for the public interest in officer safety, an officer in that position can reasonably be concerned for safety when they see a bullet sitting in a car and believe that a gun could be present in that vehicle. That certainly is not a benign situation. Also, Your Honor, there's been some discussion with regard to what the defendant believed or did not believe in the situation, and we simply don't know. Why? Because the defendant did not testify to the motion to suppress. The burden in a motion to suppress is on the defendant. The defendant was not called in this case. We don't know whether he believed he was free to leave. We don't know what he would have said because he didn't testify. The record, of course, is unclear as to what the defendant's position is. You know, I don't understand this officer safety argument because if we're going to give, it can't give them carte blanche to just do anything, and if they're really concerned about their own safety, maybe they shouldn't approach the car at all because their safety wasn't in jeopardy until they approached the car and observed what they observed, and then they can't use what they observed as a basis to claim officer safety. Your Honor, I would respectfully disagree. I think your argument is that officers should not put themselves in a dangerous situation, but unfortunately that's what happens when you're a police officer. So the question is whether they had a right to approach the vehicle to begin with. It has nothing to do with officer safety. Well, under people who live in the issue, they did have a right to approach the vehicle. And the bullet doesn't put the officers in a less safe situation just because a bullet is present. We would disagree. I think, Your Honor, that seeing the bullet present, it's certainly then reasonable for them to infer that a gun is present. It may be reasonable for them to infer that, but it doesn't necessarily undermine their safety. Your Honor, and the argument here is that reasonableness is the standard. It's discussed by the U.S. Supreme Court in Pennsylvania v. MIMS. The touchstone of the Fourth Amendment is reasonableness, and we would argue that the officers' actions here were reasonable. For those reasons, we would ask the Court to reverse the Cod Court's granting of defendants' motions. Thank you, Your Honor. Thank you, Counsel. This matter will be taken under advisement.